RENDERED: JUNE 13, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2022-SC-0508-DG

BRADLEY RACING STABLES, LLC;
AND WILLIAM BUFF BRADLEY

APPELLANTS

ON REVIEW FROM COURT OF APPEALS
V.                    NO. 2021-CA-0766
JEFFERSON CIRCUIT COURT NO. 19-CI-001372

JOI DENISE ROBY; BLUE CROSS
BLUE SHIELD OF TEXAS; CHURCHILL
DOWNS, INC.; AND KYLE MCGINTY

APPELLEES

AND

### 2022-SC-0516-DG

CHURCHILL DOWNS, INC.

APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                    NO. 2021-CA-0766
JEFFERSON CIRCUIT COURT NO. 19-CI-001372

JOI DENISE ROBY; BLUE CROSS
BLUE SHIELD OF TEXAS; BRADLEY
RACING STABLES, LLC; WILLIAM BUFF
BRADLEY; AND KYLE MCGINTY

APPELLEES

AND

### 2022-SC-0523-DG

JOI DENISE ROBY AND
BLUE CROSS BLUE SHIELD
OF TEXAS

APPELLANTS

V.

CHURCHILL DOWNS, INC.;                                                    APPELLEES
BRADLEY RACING STABLES, LLC;
WILLIAM BUFF BRADLEY; AND
KYLE MCGINTY

**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**<u>REVERSING</u>**

The Farm Animals Activity Act ("FAAA"), KRS[1] 247.401–.4029, "provides limited liability for those engaged in farm animal activities." *Keeneland Ass'n, Inc. v. Prather*, 627 S.W.3d 878, 883 (Ky. 2021). However, limited liability "shall not apply to farm animal activity sponsors, farm animal activity professionals, persons, or participants *when engaged in horse racing activities*." KRS 247.4025(1) (emphasis added). This case presents another opportunity for us to clarify the parameters of engaging in horse racing activities. Specifically, we address whether a horse stabled in the backside of Churchill Downs during a race meet, in this instance the Kentucky Derby, but not actively engaged in any activities related to the races, was engaged in horse racing activities for the purposes of the FAAA exemption. We hold that an animal not actively engaged in activities directly related to the running of a horse race is not exempted

---

[1] Kentucky Revised Statutes

under KRS 247.4025(1), regardless of the fact that the horse was stabled in a location actively involved in horse racing.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

During the 2018 Kentucky Derby, Kyle McGinty invited Joi Denise Roby and her husband to the backside stable area of Churchill Downs.  This area was not open to the public and individuals needed credentials to gain access to the area.  As a Kentucky Horse Racing Commission ("KHRC") license holder, McGinty was credentialed to access the area and was allowed to admit two personal guests.  Roby and her husband did not purchase tickets to enter the Churchill Downs racetrack but were permitted as McGinty's personal guests.  At the gate entrance where Roby and her husband met with McGinty, a warning sign was posted.  The warning sign, as required by KRS 247.4027(3) stated:

> WARNING. Under Kentucky law, a farm animal activity sponsor, farm animal professional, or other person does not have the duty to eliminate all risks of injury of participation in farm animal activities. There are inherent risks of injury that you voluntarily accept if you participate in farm animal activities.

As McGinty's personal guests, Roby and her husband walked through the backside passing several horses stabled in the area.  Roby was familiar with and comfortable around horses.  She owned a quarter horse, had ridden horses for most of her life, and was aware of the inherent risks of being around them, including the unpredictable nature to bite.  Those inherent risks did not stop her from interacting with the horses in their stalls.  She was petting horses, giving them peppermints, and taking photographs with them.  One of

3

the horses Roby approached was a stable pony named Henry.[2]  Henry was owned by Bradley and was used to escort racehorses to and from the track, although not on the day in question.  As Roby approached Henry in his stall, he lunged and bit her.

Roby sued Bradley and Churchill Downs in Jefferson Circuit Court for breaching its duty to maintain and keep the premises safe for the use of its patrons, failing to exercise reasonable care for the safety of Roby, and failing to eliminate or warn of dangerous conditions on the premises.[3]  Bradley and Churchill Downs moved for summary judgment.

The trial court granted summary judgment, holding that the FAAA exemption contained in KRS 247.4025(1) did not apply to Churchill Downs because the stabling of a horse was a farm animal activity, not a horse racing activity.  As for Bradley, the court held the FAAA horse racing exemption did not apply because Roby was engaged in a farm animal activity when she was bit by the horse.  The court also ruled that Roby was a licensee because she conferred no benefit to Churchill Downs and no evidence in the record supported a breach of duty.  As to the application of LMCO[4] § 91.028(A), the

---

[2] "Stable ponies" are non-racing horses that tend to be older and friendlier than thoroughbred racehorses.  These stable ponies act as a calming presence for the racehorses to better control them as they go to and from the track.

[3] Blue Cross Blue Shield of Texas filed an intervening complaint against Churchill Downs and Bradley.  The Jefferson Circuit Court through an agreed order permitted Blue Cross Blue Shield to intervene as subrogee of Roby.

[4] Louisville Metro Code of Ordinances.

4

court held it did not impose strict liability for injuries caused by horses. Roby appealed.

The Court of Appeals agreed with the Jefferson Circuit Court holding on LMCO § 91.028(A) but reversed the trial court orders granting summary judgment for Bradley and Churchill Downs. The Court of Appeals found that the horse racing exemption applied because: 1) live racing was occurring; 2) Roby was injured after being bitten by a horse located on the premises; and 3) the horse was used to escort racehorses to and from the track. The court then found that Roby was an invitee under the analysis in *Bramlett v. Ryan*, 635 S.W.3d 831 (Ky. 2021).

Bradley, Churchill Downs, and Roby all sought discretionary review from this Court, which we granted. Bradley and Churchill Downs sought discretionary review of the Court of Appeals' ruling as to the applicability of the FAAA horse racing exemption and Roby's status as an invitee. Roby sought discretionary review on the Court of Appeals' application of LMCO § 91.028(A).

## II. STANDARD OF REVIEW

Summary judgment is proper when the record shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[5] 56.03. As a matter of law, we review issues relative to statutory construction *de novo*. We owe no deference to the construction of

---

[5] Kentucky Rules of Civil Procedure.

5

statutes by the trial court or Court of Appeals. *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007).

The primary objective in construing statutory language is determining the intent of the legislature in enacting the legislation. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012). To do so, we look first to the language of the statute, giving the words their plain and ordinary meaning. *Id.* at 719; *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011); *Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 779 (Ky. 2008). Statutes are to be construed as they are written, and "the intent of the legislature must be deduced from the language it used, when it is plain and unambiguous[.]" *W. Ky. Coal Co. v. Nall & Bailey*, 228 Ky. 76, 80, 14 S.W.2d 400, 401-02 (1929). This Court has previously held "the language of the FAAA [to be] clear and the provisions . . . easily applied to the parties and activities in this case." *Prather*, 627 S.W.3d at 883. We once again find that to be true here.

### III.   ANALYSIS

This case turns on the interpretation of the FAAA horse racing exemption contained in KRS 247.4025(1). We must decide whether any party was "engaged in horse racing activities" at the time of Roby's injuries. Whether or not the horse racing exemption applies here will determine liability for Churchill Downs and Bradley.

6

### A. The FAAA horse racing exemption does not apply to Roby.

"The FAAA was enacted to define the duties of persons responsible for farm animals to others who participate [or engage] in farm animal activities." *Prather*, 627 S.W.3d at 883 (citing KRS 247.4013).[6]  A person "engages in a farm animal activity" by:

> [L]eading, showing, exhibiting, riding, training, providing, or assisting in providing medical treatment of, grooming, driving, or being a passenger upon a farm animal, whether mounted or unmounted; visiting, touring, or utilizing a farm animal facility as part of an organized event or activity; or assisting a participant or show management in farm animal activities. The term does not include being a spectator at a farm animal activity, except in cases where the spectator voluntarily places himself or herself in immediate proximity to the activity.

KRS 247.4015(1).

Our legislature wanted to preserve and promote the long Kentucky tradition of activities involving farm animals and the safety of its participants. KRS 247.401.  To accomplish that goal the legislature established that, "persons do not have a duty to eliminate risks inherent in farm animal activities which are beyond their immediate control if those risks are or should be reasonably obvious, expected or necessary to participants engaged in farm animal activities."  KRS 247.4013.  Although farm animal activity sponsors, farm animal professionals, or other persons do not have a duty to eliminate those inherent risks, they still owe a duty to reasonably warn of the inherent risks of the farm animal activities.  KRS 247.402(1).  With few exceptions, if

---

[6] The FAAA includes horses as a type of farm animal.  KRS 247.4015(2).

participants are reasonably warned of the inherent risks of farm animal activities, then they shall not "make any claim against, maintain an action against, or recover from a farm animal activity sponsor, a farm animal professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of farm animal activities."[7] *Id.* Those "inherent risks of farm animal activities" include, but are not limited to, the unpredictability of a horse's reaction "to sounds, sudden movement, and unfamiliar . . . persons." KRS 247.4015(9)(b).

In addressing farm animal activities, our legislature also described certain other related activities that were not to be granted limited liability by exempting those activities from FAAA application. One such exemption is for those engaged in horse racing activities. The FAAA states it "shall not apply to farm animal activity sponsors, farm animal activity professionals, persons, or participants *when engaged in horse racing activities.*" KRS 247.4025(1) (emphasis added). The FAAA defined "'horse racing activities' [to be] the conduct of horse racing activities within the confines of any horse racing facility licensed and regulated by KRS 230.070 to 230.990, but shall not include harness racing at county fairs." KRS 247.4015(8). By defining "horse racing activities" as, essentially, "horse racing activities", the legislature left us with little direction beyond the common meaning of the phrase. Thus, unlike

---

[7] KRS 247.402(2)-(3) provides exceptions for participants to file claims against farm animal activity sponsors, farm animal professionals, or any other persons, none of which apply in this case.

"engages in a farm animal activity," the FAAA did not define what it means to engage in a horse racing activity beyond providing a geographical limitation.

We reason that a horse racing activity is in some way different than a farm animal activity. That difference between "engaging in a horse racing activity" and "engaging in a farm animal activity" is enough to be exempted from FAAA application. The line between when one is engaged in farm animal activities and horse racing activities presents a fact-intensive question focused on the actions of the animal itself, taken in context, as opposed to a blanket determination taken from the general character of the event. Fortunately, the case before us presents a clear-cut instance where an animal was engaged only in farm animal activities despite the occurrence of racing at the same venue.

This conclusion flows naturally from our prior decisions regarding the horse racing exemption. This Court has previously held the horse racing exemption did not apply when someone fell to the ground after a horse broke loose at Keeneland. *Prather*, 627 S.W.3d at 881. Prather visited Keeneland during a September Yearling Sale event. *Id.* at 880. Sales events involve an enclosed sales pavilion where auctions occur, and the premises includes a backside area where the horses are stalled. *Id.* at 881. Keeneland's sales also typically do not occur concurrently with racing meets at the track. *Id.* at 886. The events that led to Prather's injury occurred when a horse broke loose as a handler was loading the horse into a van. *Id.* The horse bolted towards Prather's direction, and he fell trying to avoid the horse. *Id.*

9

We determined the horse racing exemption did not apply because Prather's injuries stemmed from an inherent risk of engaging in a farm animal activity, not a horse racing activity. *Prather*, 627 S.W.3d at 887-88. "A horse becoming 'spooked' or getting loose from its handler is something farm animal activity sponsors and participants should recognize as an obvious risk." *Id.* at 888. "Prather, a participant familiar with horses generally . . . testified that the area where the horse was crossing was very crowded with people. Any number of things could have startled the horse and caused it to break loose from the handler." *Id.* at 889.

Roby's case is like *Prather* in many aspects. Both Roby and Prather had experience in the horse industry and were aware of the inherent risks associated with horses. *Id.* at 889. Roby owned her own horse, rode horses for many years, and was aware of the unpredictability of horses to bite. Prather had two previous employment experiences involving horses and worked for another company where a horse got loose. *Id.* Another similarity between the two cases is that both Keeneland and Churchill Downs had clearly visible signs warning of the inherent risks of farm animal activities, in accordance with KRS 247.4027(3). *Id.* at 888.

Roby's case has distinguishable facts. In *Prather*, "[n]o live racing was occurring" on the day Prather was injured. *Id.* at 886. Live horse racing was occurring on the day Roby was injured. Roby was also not located in an area open to the public. She was in a restricted access area of Churchill Downs under McGinty's escort. Further, the horse that bit Roby was responsible for

10

escorting racehorses to and from the track — although the horse was not engaged in that activity that day. While distinguishable, the differences are not enough for this Court to find that the horse racing exemption applies to Roby.

The primary complication presented by Roby's case is that the incident occurred on Churchill Downs' busiest day of the year, although no dispute exists that the offending horse was merely boarding on the backside of the track. Accordingly, these activities were conducted within the confines of a horse racing facility and the situs element of the horse racing exemption is satisfied. Roby's argument relies on the distinguishing facts from *Prather* to meet the conduct element of "engaged in horse racing activities." She argues the horse racing exemption should apply because horse racing was occurring on the day she was injured, she was injured on the premises, and the horse was used to escort racehorses to and from the track. Roby contends that if these facts do not qualify as horse racing activities, then the exemption will most likely only be applied to jockeys during the actual race itself. We disagree.

As relates to Henry the horse, neither Bradley nor Churchill Downs were engaged in horse racing activities at the time Roby was injured. Bradley owned the horse that bit Roby and used the horse to escort racehorses to and from track. But at the time Henry bit Roby, the horse was not being used to escort a racehorse to the track. The horse was in its stall when Roby approached it. Bradley was engaged in a farm animal activity as defined in KRS 247.4015. He was "[b]oarding farm animals" and "utilizing a farm animal facility as part of an

11

organized event or activity." *See* KRS 247.4015(1) (defining engages in a farm animal activity); *see also* KRS 247.4015(3)(c) (defining farm animal activities). Bradley's activity fits that of a farm animal activity, but not a horse racing activity.

Whether Churchill Downs was engaged in horse racing activities is a closer call. Roby was injured on Derby Day and Churchill Downs was engaged in live horse racing on that day. However, Churchill Downs also boards hundreds of horses at its location year-round. Not every horse stalled at a horse racing facility is engaged in horse racing activities whenever live horse racing is occurring. At the time of Roby's injuries, Churchill Downs was also engaged in the farm animal activity of boarding a farm animal. Churchill Downs was not using the horse to escort racehorses to the racetrack. Applying the horse racing exemption to every horse located at a horse racing facility even if that horse has nothing to do with the horse racing defeats the legislature's goal of preserving the long Kentucky tradition of activities involving horses.[8]

Roby was also not engaged in horse racing activities as a participant. She was interacting with the horses in their stalls in a restricted access area. Roby obtained admission to the backside with the plan to watch the races from that area. By walking past and interacting with the horses she "voluntarily

---

[8] This conclusion also avoids the absurd result that simply by virtue of racing occurring at a track, any and all farm animals located on the premises are somehow involved in horse racing activities. We can imagine no reasonable argument that the chickens and goats known to roam the backside of Churchill Downs would be "engaged in horse racing activities" simply by being present during a meet.

12

place[d] . . . herself in immediate proximity of the [farm animal] activity." KRS 247.4015(1).

Not applying the horse racing exemption to Roby's case does not mean the exemption will only be limited to jockeys during the race and/or stable hands near a racehorse. [9] The key to applying the horse racing exemption is to determine whether the activity engaged in at the time of the injury meets the definition of engaging in a farm animal activity. If the activity engaged in at the time of the injury possesses some direct relationship to horse racing, then it could meet the definition of a horse racing activity. For example, and as shown by the recent running of the 150th Kentucky Derby, the paddock and track area can host massive crowds of people standing near horses engaged in a horse racing activity. Without deciding, we believe one would be hard-pressed to argue the horse racing exemption did not apply were any of those people to be injured by a thoroughbred or stable pony in that context. Thus, the horse racing exemption is not rendered meaningless but is instead focused in on the activities that uniquely occur at horse racing events.

In sum, horse racing activities were occurring at Churchill Downs during the Kentucky Derby, but not when Roby was bitten by the horse. Bradley, Churchill Downs, and Roby were engaged in a farm animal activity at the time

---

[9] We make no pronouncement concerning possible application of the FAAA to jockeys or stable hands. In *Munday v. Churchill Downs, Inc.*, 600 S.W.2d 487 (Ky. App. 1980), the Court of Appeals held that under the facts presented a jockey was an independent contractor, not an employee, and not, therefore, entitled to workers' compensation.

13

she suffered her injuries. The horse was secured in its stall and was not escorting any racehorses to and from the track at the time he bit Roby. Therefore, the FAAA horse racing exemption, KRS 247.4025(1), does not apply to Roby's injuries.

### B. LMCO § 91.028(A) does not apply to Roby's injuries.

Roby argues that Bradley and Churchill Downs should be liable for her personal injuries caused by the horse because LMCO § 91.028(A) imposes liability for any personal injury caused by an animal. We agree with the lower courts and find Roby's argument to be unconvincing.

LMCO § 91.028(A) states "[a]ny person, owning, controlling or having care or custody of any animal shall be liable for any personal injury caused by such animal, and for any damages caused by such animal to public or private property." While on its face, the ordinance would appear to apply to Roby's case, in light of our holding above, LMCO § 91.028(A) is inapplicable. In this instance, the breadth of Louisville's ordinance brings it into conflict with the FAAA which specifically limits liability for persons that would otherwise be held liable under LMCO § 91.028(A). Where a municipal ordinance conflicts with state law, the ordinance is rendered invalid. *Boyle v. Campbell*, 450 S.W.2d 265, 268 (Ky. 1970). Accordingly, the FAAA prevails over the ordinance and Bradley and Churchill Downs do not owe Roby a duty under LMCO § 91.028(A) and are not liable.

14

### C. *Roby's argument as to the duty owed by Churchill Downs is moot.*

In her argument before this Court, Roby contends that Churchill Downs owed her a duty of care such that they could be held liable for the injuries she sustained while on its property. Because we have already held that the FAAA precludes liability for Roby's injury, Roby's arguments regarding the duty owed to her by Churchill Downs are rendered moot.

## IV. CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals and reinstate the Jefferson Circuit Court orders granting summary judgment to Bradley and Churchill Downs.

All sitting. All concur.

COUNSEL FOR APPELLANTS/APPELLEES,
WILLIAM BRADLEY AND BRADLEY RACING
STABLES, LLC:

James P. Nolan II
Neil P. Baine
Matthew F.X. Craven
Perry A. Adanick
Rolfes Henry Co., LPA

COUNSEL FOR APPELLANT/APPELLEE,
JOI DENISE ROBY:

Jennifer R. Hall
Hall Legal Group, PLLC

Nicholas Darrell Mudd
Mudd Legal Group, PLLC

COUNSEL FOR APPELLANT/APPELLEE,
CHURCHILL DOWNS INC.:

Patricia C. Le Meur
Katherine T. Watts
John F. Parker, Jr.
Phillips Parker Orberson & Arnett, PLC


COUNSEL FOR APPELLEE,
BLUE CROSS BLUE SHIELD
OF TEXAS:

Linda Helen Clare
Anthony George Galasso, Jr.


APPELLEE:
Kyle McGinty, Pro se